NAUM S. BERS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Bers v. Commissioner
Docket No. 9029-74.
United States Tax Court
T.C. Memo 1976-263; 1976 Tax Ct. Memo LEXIS 137; 35 T.C.M. (CCH) 1152; T.C.M. (RIA) 760263; August 23, 1976, Filed Naum S. Bers, pro se. Randolph D. Mason, for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: Respondent determined a deficiency in the amount of $878.59 in petitioner's 1972 Federal income tax. We must decide whether petitioner is entitled to a loss deduction for that year in respect of certain manuscripts which he claims disappeared from his office. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner was a resident of Rockville, Maryland, at the time of filing his petition herein. Petitioner is a biomedical engineer and holds a doctoral degree in that field. Colorado Electronic Technical *138 College (CETC) employed petitioner as the director of its biomedical engineering department which engaged in the training of technicians and repairmen for hospital and other types of medical equipment. The employment was for a minimum of one year at a salary of $18,000 annually. As part of the agreement, petitioner agreed "to organize and develop the training course and prepare the text books and supervise the training for the Biomedical Equipment courses of this College * * *." Petitioner began work on or about June 11, 1971, and continued until he was discharged in September, 1971. He received $5,500 in compensation for this period. For approximately one year prior to commencing work at CETC, petitioner was unemployed. During this period, he researched and prepared certain manuscripts concerning biomedical engineering. At CETC petitioner taught courses, designed course curricula, trained classroom instructors, and prepared course outlines, lecture notes and materials for a textbook on biomedical engineering. Shortly after his employment was terminated, petitioner returned to his CETC office to retrieve his personal belongings whereupon he discovered that certain written *139 materials were missing. CETC retained certain of petitioner's writings claiming that they were prepared for CETC and were its property under its employment agreement with petitioner. On November 12, 1971, petitioner filed suit against CETC in the district court of El Paso County, Colorado, for breach of his employment agreement. Petitioner therein prayed for the following relief: $12,750 as the balance owing on his employment agreement with CETC, [1] $2,000 as expenses incurred by petitioner in seeking other employment, and $30,000 as exemplary or punitive damages. After trial, the court found petitioner was entitled to no relief. On his 1972 tax return, petitioner claimed a deductible loss in the amount of $11,316.54 with the following explanation: A debt to me from Mr. Robert L. Laura and his associates [2] of Manitou Springs, Colorado, became due on June 10, 1972, in the amount of $12500.00. The Industrial Commission of Colorado has ruled in my favor in my case against those people before them, and awarded me insurance benefits in the amount of $1043.99. *140 It looks like it may be a long time, if ever, before I will collect through some legal action to enforce payment. I have taken this case to the Court. Thus, subtracting from this bad debt the insurance compensation and a State income tax refund for $139.46, I claim: Losses in the amount of $11,316.54. Respondent disallowed the claimed loss. OPINION Petitioner's principal contention is that the circumstances of the retention of his papers by CETC were such as to entitle him to a deduction for a theft loss. Sec. 165(c)(3). [3] In support of this position, petitioner alleges that among the papers missing from his CETC office when he went there to collect his personal things were four three-inch, three-ring binders containing manuscripts which he had prepared prior to accepting employment with CETC and in which CETC had no property right. As the petitioner was informed by the Court at the beginning of the trial, the burden of proof is upon him. We have carefully *141 examined and considered all of the testimony and documentary evidence in order to determine whether petitioner has carried his burden. Rule 142, Tax Court Rules of Practice and Procedure. To prevail, petitioner must show: (1) the theft of his property, (2) the amount of loss he sustained, and (3) that the year for which the loss is claimed is the year in which the loss was discovered, or if he had a reasonable prospect of recovery at the time the loss was discovered, the year in which he determined with reasonable certainty that no recovery would be had. See section 165(c); section 1.165-8, Income Tax Regs.[4] Whatever our sympathies for petitioner may be in light of his unfortunate experience with CETC, he has failed to satisfy any of these requirements. There is insufficient evidence in the record before us from which we might conclude that petitioner's personal property was stolen. Petitioner reported no theft to law enforcement authorities. While we realize a criminal conviction is not a prerequisite to the taking of a theft loss deduction ( Michele Monteleone,34 T.C. 688, 694 (1960)), *142 we think the failure to report any theft and petitioner's failure to explain why he failed to do so are elements to be taken into account in determining whether a theft, in fact, occurred. Similarly, petitioner sought no recovery by way of civil action against the alleged takers for his claimed loss. His pleadings in the breach of contract action make no reference to this alleged taking and claim no relief therefor, although the taking is said to have occurred within the same set of facts and circumstances attending petitioner's employment discharge. [5] To these factors, we would add that CETC denied taking any of petitioner's personal property (cf. Bula E. Croker,27 B.T.A. 588 (1933)), and that prior to his discharge, petitioner had complained to CETC administrators that he needed bars for his filing cabinets since he found documents missing in July, 1971 (cf. Paul Bakewell,Jr.,23 T.C. 803, 805-06 (1955)). In short, the record will not support a finding of theft. *143 We are constrained to note that petitioner also has not met his burden of proving the amount of loss he sustained or that the loss was sustained in 1972 rather than 1971. [6]
Both prior to, and at, the trial of this case, petitioner abandoned his claim to the extent that it was based upon a bad debt deduction as stated in his return. Nevertheless, he seems to have reasserted that basis on brief. Any claim for a bad debt deduction would rest upon an alleged oral promise of a CETC administrator to pay him $12,500 by July, 1972. If such promise were considered as related to the alleged theft, petitioner has not satisfied his burden of proof that his prospects of recovery were sufficiently nonexistent to justify a deduction in 1972, the only taxable year before us. See footnote 6, supra;GeorgeM. Still, Inc.,19 T.C. 1072, 1076 (1953), affd. per curiam 218 F.2d 639 (2d Cir. 1955). *144 If, as appears to be the case, such promise were related to a possible breach of petitioner's contract of employment with CETC, the claim would simply be for loss of anticipated earnings which does not furnish any ground for deduction. Hort v. Commissioner,313 U.S. 28, 32-33 (1941); Ernest L. Rink,51 T.C. 746, 753 (1969). [7]
Petitioner simply cannot prevail whether his claim is viewed as an alleged theft loss or bad debt deduction. To reflect the parties' concessions on other issues, Decision will be entered under Rule 155. Footnotes
1. The actual difference between the $18,000 annual salary promised to petitioner and the $5,500 he was paid was $12,500.↩
2. Mr. Robert M. Laura and his "associates" were the administrators of CETC.↩
3. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable year involved.↩
4. See also Robert C. Sutton,T.C. Memo. 1975-222↩.
5. Petitioner now takes the position that his claim for punitive or exemplary damages encompassed this loss. We cannot accept this contention; no factual allegations of wrongful appropriation were made and the complaint was drafted by an attorney who presumably knew the difference between actual and punitive damages. We also note that there is nothing in the record of the proceedings before the Colorado Department of Labor and Employment, as a result of which petitioner received a small amount of unemployment benefits, which deals with the alleged taking, although the hearing officers permitted petitioner wide latitude in exploring the circumstances surrounding his discharge by CETC.↩
6. Petitioner contends his breach of contract suit and settlement negotiations in respect thereof were his "prospect of recovery" postponing his deduction. We do not agree. See footnote 5, supra.↩ Moreover, even if this were so, the suit was not finally disposed of until 1973.
7. See also Wilson R. Anderson,T.C. Memo. 1964-88↩.