LANE G. RICE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Rice v. Commissioner
Docket No. 4858-80.
United States Tax Court
T.C. Memo 1982-129; 1982 Tax Ct. Memo LEXIS 616; 43 T.C.M. (CCH) 796; T.C.M. (RIA) 82129; March 17, 1982. Lane G. Rice, pro se. Kenneth W. McWade, for the respondent. SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge:* Respondent determined deficiencies in petitioner's Federal income tax for 1978 in the amount of $ 16,152.30. The issues for our decision are: (1) Whether wages are income within the meaning of the Sixteenth Amendment; [1] and (2) whether petitioner has substantiated *617 deductions from his gross income in excess of the zero bracket amount. FINDINGS OF FACT Some of the facts have been stipulated by the parties and are found accordingly. Petitioner Lane G. Rice (Mr. Rice) resided at Palmer, Alaska, when he filed his petition herein. [2]
Mr. Rice was married to Teresa A. Rice (Mrs. Rice) during the taxable year 1978. They filed a joint Federal income tax return for 1978 with the Western Service Center in Ogden, Utah. Mr. Rice was employed by Matanuska Electrical Association, Inc. (Matanuska). For the taxable year 1978, Matanuska issued to him a Form W-2 which showed his total wages to be $ 41,500.80. Mrs. Rice was employed by Alaska Teamsters Medical Services Company (Alaska Teamsters). For the taxable year 1978, *618 Alaska Teamsters issued to her a Form W-2 which indicated that she had received from them wages of $ 12,242.79. In 1978, Mr. and Mrs. Rice paid various Alaska state and local taxes, including state income taxes of $ 2,436.12, an Alaska "School Tax" of $ 20.00, an "ESC" tax [3] of $ 160.00, and real estate taxes of $ 866.38. They also paid state and local gasoline taxes, the amount of which may be approximated using respondent's tables and the mileage Mr. and Mrs. Rice drove their car in 1978. This mileage figure is 12,679 miles. In 1978, Mr. and Mrs. Rice also made interest payments to various creditors including $ 5,004.98 on a home mortgage and $ 30.90 on a bank loan. In addition, Mr. Rice paid interest of $ 696.93 to a credit union which had lent him money on an account which bore his mother's name as well as his own. When Mr. and Mrs. Rice filed their joint Federal income tax return for 1978, they attached to the return their respective Forms W-2. However, in filling out their return, they reported wages, salaries, tips, and other employee compensation of zero. They checked boxes to claim three *619 personal exemptions, [4] but failed to list itemized deductions in excess of the zero bracket amount. OPINION Mr. Rice acknowledges that Congress intended to tax wages, such as those he and Mrs. Rice earned from Matanuska and Alaska Teamsters, as "[c]ompensation for services, including fees, commissions, and similar items." Section 61(a). [5] However, he claims that this is an unconstitutional attempt to tax, without apportionment, something which is not income within the meaning of the Sixteenth Amendment. Mr. Rice asserts that wages are not income because they are not "gain derived from capital, from labor, or from both combined." [6] Instead, Mr. Rice contends that wages arise from an equal exchange of labor or services for property, a transaction in which no gain is "derived." Accordingly, Mr. Rice concludes that he has no taxable income despite Congress' intention *620 to tax his wages as such. We disagree. The Supreme Court early established the principle that the word "income", as it is used in the Sixteenth Amendment, is to be construed according to its common, everyday meaning. In Lynch v. Hornby,247 U.S. 339, 344 (1918), the Court stated, "* * * Congress was at liberty under the [Sixteenth] Amendment to tax as income, without apportionment, everything that became income, in the ordinary sense of the word * * *." Under this principle, the ordinary, and perhaps most common, meaning of "income" has been wages. Thus, when a coal company argued before the Supreme Court that the proceeds from its sale of ore, which it had dug from its properties, were the return of depleted capital, not income, the Court dismissed the argument, observing "the same is true of the earnings of the human brain and hand when unaided by capital, yet such earnings are commonly dealt with in legislation as income." Stratton's Independence v. Howbert,supra note 6, at 415. This *621 quote illustrates that whether or not wages can be characterized as the product of an exchange, they are still income within the Constitutional embrace. [7]
Mr. Rice misconstrues the oft-cited phrase that income is "gain derived from capital, from labor, or from both combined" to mean that wages are not income. Wages are "derived" from labor or services in the sense that they cannot be gained without such labor. Although the wages received by Mr. Rice may represent no more than the time-value of his work, they are nonetheless the fruit of his labor, and therefore represent gain derived from labor which may be taxed as income. Even if we were to agree with Mr. Rice's contention that wages are, in effect, an exchange of equal value for value, he would still *622 be taxable upon the wages he and Mrs. Rice received in 1978. The general doctrine that receipts representing a return of capital are not taxed [8] does not apply when a taxpayer has a zero basis in the property he exchanged for the receipts. See Wilson v. Commissioner,27 T.C. 976 (1957), affd. per curiam 255 F.2d 702 (5th Cir. 1958); Bryan v. Commissioner,16 T.C. 972 (1951); Rains v. Commissioner,38 B.T.A. 1189 (1938). Mr. Rice did not establish that he had a basis in the services he rendered to Matanuska, nor did he establish that Mrs. Rice had a basis in the services she rendered to Alaska Teamsters. [9] Thus, each had taxable gain upon receipt of wages from their respective companies. Section 1001. *623 Since Mr. Rice has failed to establish that he did not have taxable income in 1978, we must determine whether he is entitled to deductions in excess of the zero bracket amount. Respondent concedes that Mr. Rice has established itemized deductions totaling $ 5,902.25. We find that he is also entitled to itemized deductions consisting of state income taxes withheld, interest paid on a credit union loan, [10] and such state and local gasoline taxes paid as may be computed from respondent's tables and the number of miles Mr. Rice's car was driven. Mr. Rice has failed to establish for what purposes the Alaska "School Tax" and the "ESC" tax were paid or to what uses they related. Thus, he has not satisfied his burden of proving that these taxes were deductible state and local *624 taxes pursuant to section 164. Rule 142(a). Accordingly, respondent's determination with respect to their deductibility will be sustained. Decision will be entered under Rule 155.
Footnotes
*. This case was tried before Judge Cynthia Holcomb Hall who subsequently resigned from the Court. By order of the Chief Judge dated February 8, 1982, the case was reassigned to Judge Perry Shields for disposition. ↩
1. U.S. Constitution, Amendment XVI↩.
2. Respondent mailed his 90-day letter to Lane G. and Teresa A. Rice. Only Lane G. Rice filed a petition with this Court contesting respondent's determinations.↩
3. Neither party has explained for what this tax was paid or used.↩
4. From their 1978 return, it appears that they had a dependent son.↩
5. All statutory references are to the Internal Revenue Code of 1954, as in effect during the year in issue. Unless otherwise indicated, any reference to "Rules" shall be deemed to refer to the Tax Court Rules of Practice and Procedure.↩
6. Stratton's Independence v. Howbert,231 U.S. 399 (1913), cited in Eisner v. Macomber,252 U.S. 189, 207↩ (1920).
7. See also Crisman v. Commissioner,T.C. Memo. 1980-361; Hanson v. Commissioner,T.C. Memo. 1980-197; Cardinalli v. Commissioner,T.C. Memo. 1979-462. Cf., Kellems v. United States,97 F. Supp. 681↩ (D.C. Conn. 1951) (Withholding Act held constitutional; therefore, wages, from which withholding taxes are reserved, are constitutionally taxable as income).
8. United States v. Safety Car Heating & Lighting Co.,297 U.S. 88, 96-97 (1936); Southern Pacific Co. v. Lowe,247 U.S. 330, 335↩ (1918). 9. We have held that such expenditures as a taxpayer makes to satisfy his human needs and those of his family do not constitute a basis for services rendered which may be deducted from wages as a "cost of doing labor" in the same way that "cost of goods sold" may be deducted upon the sale of inventory. Reading v. Commissioner,70 T.C. 730, 733 (1978), affd. 614 F. 2d 159↩ (8th Cir. 1980).
10. Although the credit union account bore Mr. Rice's mother's name as well as his own, Mr. Rice testified that he had taken out the loan and had made all interest payments due on it. The transcript of his uncontradicted testimony did not give us cause to doubt his credibility. Moreover, the record contains no evidence which tends to indicate that anyone other than Mr. Rice had paid interest on the loan.↩